| | |
|---|---|
| **MICHAEL DAYNE BRIDGEMAN,**<br><br>Petitioner,<br><br>v.<br><br>**MICHAEL STAINER, Warden,**<br><br>Respondent. | CASE NO. 12cv0212 IEG (PCL)<br><br>REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE:<br><br>DENYING PETITIONER'S FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS [Doc. 5] |

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**I.**

**INTRODUCTION**

Michael Dayne Bridgeman, a state prisoner proceeding *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his San Diego Superior Court conviction in case No. SCD223385 for assault by means likely to produce great bodily injury and dissuading a witness by force or threat. (Doc. 5.) The court sentenced him to 11 years in state prison. (Lodgment 16, at 1.)

Petitioner alleges he was provided ineffective assistance of counsel in violation of his Sixth Amendment right to counsel, and that the trial court abused its discretion when it denied his three

Marsden[1] motions. (Doc. 5.) The Court has considered the First Amended Petition, Respondent's Answer and Memorandum of Points and Authorities in support thereof, Petitioner's Traverse, and all the supporting documents submitted by the parties. For the reasons set forth below, the Court recommends that the Petition be **DENIED**.

## II.

## FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct. Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The facts of the underlying crime, as found by the state appellate court, are as follows:

> On October 11, 2009, multiple witnesses saw Bridgeman punch Robert Taylor numerous times in the head and then stomp on his head as he lay unconscious on the ground. When Taylor's girlfriend attempted to call the police, Bridgeman chased after her and threatened to kill her. Witnesses then observed Bridgeman drag Taylor, who was still unconscious, onto a sleeping bag in an attempted coverup.

(Lodgment 16, at 2.)

The state appellate court's findings as to Petitioner's first Marsden motion are as follows:

> On March 23, 2010, the court conducted a hearing on Bridgeman's first *Marsden* motion. During the hearing, Bridgeman contended his attorney, Bruce Kotler, failed to adequately represent him in a number of ways. First, he stated Kotler showed up late to a preliminary hearing and when Bridgeman began talking to him he said: "Please be quiet. I need to hear what's going on." He stated that Kotler was generally unavailable and did not visit him while in custody to discuss his case with him. He expressed dissatisfaction with the plea bargain Kotler had obtained and requested Kotler further investigate by taking photographs of the scene of the crime and procuring witnesses to testify to his good character. In summary, Bridgeman contended that Kotler did not devote enough time to his case to effectively represent him.
>
> Kotler responded by pointing out that he had discussed Bridgeman's case with him at "various court hearings" and had visited him in jail for "a couple of hours" the week prior. Kotler further stated that he had only recently learned of Bridgeman's request for Kotler to seek character witnesses and was willing to do so. He indicated that he had cross-examined the prosecution's four witnesses and negotiated a plea bargain of five years, when Bridgeman faced up to 20, which Bridgeman rejected.

---

1. People v. Marsden, 2 Cal. 3d 118 (1970).

12cv212 IEG (PCL)

(Id. at 3-4.)

As to the second <u>Marsden</u> motion, the state appellate court found:

> On May 17, 2010, the court conducted a second *Marsden* hearing. During the hearing, Bridgeman stated that he believed Kotler had not "given [him] the best of his (Kotler's) ability" in that he had not followed up with potential witnesses, he had failed to obtain court records that Bridgeman requested, and he was not optimistic about Bridgeman's case. Bridgeman concluded he felt like he and Kotler did not see eye-to-eye on his case.

(Id. at 5.)

As to the third <u>Marsden</u> motion, the state appellate court found:

> At Bridgeman's third and final *Marsden* hearing, the court explicitly asked him what new grounds for the motion, if any, he had that he had not brought up at his previous motion hearings. Bridgeman admitted he had none. The court then denied his motion.

(Id. at 6.)

### III.

### PROCEDURAL BACKGROUND

A jury convicted Michael Dayne Bridgeman of assault by means likely to produce great bodily injury, a violation of Pen. Code § 245 subd. (a)(1), and dissuading a witnesses by force or threat, a violation of Pen. Code § 136.1 subd. (c). (Lodgment 10, at 505-510.) There was a prior strike alleged, but it was not found to be true. (Lodgment 12, at 715.) The court sentenced Bridgeman to a term of eleven years. (Id. at 717.)

Bridgeman filed a timely appeal, claiming the trial court abused its discretion in denying his <u>Marsden</u> motions in violation of his Sixth Amendment right to counsel. (Lodgment 16, at 1.) The appellate court affirmed. (Id.) On September 15, 2011 Bridgeman petitioned the Supreme Court of the State of California for review, arguing the same grounds. (Lodgment 17, at 1, 3.) The petition for review was summarily denied on October 19, 2011. (Lodgment 18.)

Arguing the same grounds raised in state court, Bridgeman filed his First Amended Petition for Writ of Habeas Corpus with this Court on March 12, 2012. (Doc. 5.) Respondents answered on July 11, 2012. (Doc. 11-1.) Petitioner filed a traverse on August 28, 2012. (Doc. 17.)

///

## IV.
## SCOPE OF REVIEW

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal habeas courts may not "reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 68 (1991). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005); see Park v. California, 202 F.3d 1146, 1149-50 (9th Cir. 2000) ("a violation of state law standing alone is not cognizable in federal court on habeas").

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs review of Bridgeman's claims because he filed his federal habeas petition after that statute's 1996 effective date. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997). AEDPA imposes a "'highly deferential standard for evaluating state-court rulings,'" requiring "that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002) (quoting Lindh, 521 U.S. at 333 n.7). Habeas corpus is a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. __, 131 S. Ct. 770, 786 (2011) (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

"AEDPA prevents defendants – and federal courts – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. __, 130 S. Ct. 1855, 1866 (2010). "By its terms § 2254(d) bars relitigation of any

claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Richter, 131 S. Ct. at 784.  Habeas relief is available under the first exception if the state court result "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see Lockyer v. Andrade, 538 U.S. 63, 73-76 (2003); see also Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (distinguishing the 28 U.S.C. § 2254(d)(1) "contrary to" test from its "unreasonable application" test). To be found an "unreasonable application" of the precedent, the state court decision must have been "more than incorrect or erroneous;" it "must have been 'objectively unreasonable.'" Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citations omitted).  The lack of holdings from the Supreme Court on the issue presented precludes relief under 28 U.S.C. § 2254(d)(1). Carey v. Musladin, 549 U.S. 70, 77 (2006).  "[W]hen a Supreme Court decision does not 'squarely address[]' the issue . . . it cannot be said, under AEDPA, there is 'clearly established' Supreme Court precedent addressing the issue," and the federal habeas court "must defer to the state court's decision." Moses v. Payne, 555 F.3d 742, 754 (9th Cir. 2009). "Circuit precedent may provide 'persuasive authority' for purposes of determining whether a state court decision is an 'unreasonable application' of Supreme Court precedent", but "only Supreme Court holdings are binding on state courts, and 'only those holdings need be reasonably applied.'" Rodgers v. Marshall, 678 F.3d 1149, 1155 (9th Cir. 2012) (citation omitted).

Under the second AEDPA exception, relief is available only if the state court based its result "on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003); Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (The question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher threshold").

In applying these standards, the Court looks to the last reasoned state court decision. See Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir.2008); see also Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). To the extent no such reasoned opinion exists, as where a state court rejected a claim in an unreasoned order, this Court must conduct an independent review to determine whether the decisions were contrary to, or involved an unreasonable application of, "clearly established" Supreme Court precedent. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. Id. at 981-82.

## V.

## ANALYSIS

Petitioner claims his federal constitutional rights were violated on two grounds: (1) trial counsel was ineffective; and (2) the trial court abused its discretion when it denied his three Marsden motions. (Doc. 5, at 22.) These claims are related, but will be discussed separately.

Respondent argues that the "AEDPA precludes relief on Bridgeman's claim the trial court abused its discretion in denying his Marsden motions ... because it was rejected on the merits by the state court in a decision that is not contrary to, or an unreasonable application of, Supreme Court law." (Doc. 11, at 6.)

Petitioner responds, in his Traverse, that the conflict between Petitioner and his counsel resulted in a total lack of communication, precluding an adequate defense. (Doc. 17, at 1, 3.)

**A.** *Ineffectiveness of Trial Counsel*

To establish ineffective assistance of counsel under federal law, Petitioner must prove: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694, 697 (1984). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the

outcome." Id. at 694. The Court may reject the claim upon finding either that counsel's performance was reasonable or the claimed error was not prejudicial. Id. at 697; see also Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the Strickland test obviates the need to consider the other.").

Review of counsel's performance is "highly deferential" and there is a "strong presumption" that counsel rendered adequate assistance and exercised reasonable professional judgment. Williams v. Woodford, 384 F.3d 567, 610 (9th Cir. 2004) (quoting Strickland, 466 U.S. at 689). The Court must judge the reasonableness of counsel's conduct "on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. The Court may "'neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight ....'" Matylinsky v. Budge, 577 F.3d 1083, 1091 (9th Cir. 2009) (internal citation omitted); see Yarborough v. Gentry, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight."). Petitioner bears the burden to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (internal quotations omitted). Moreover, "an irreconcilable conflict in violation of the Sixth Amendment occurs only where there is a complete breakdown in communication between the attorney and client, and the breakdown prevents effective assistance of counsel." Stenson v. Lambert, 504 F.3d 873, 886 (9th Cir. 2007). "Disagreements over strategical or tactical decisions do not rise to the level of a complete breakdown in communication." Id. Appointed counsel is in charge of trial tactics and theory of defense. U.S. v. Wadsworth, 830 F.2d 1500, 1509 (9th Cir. 1987). There is no Sixth Amendment right to a meaningful relationship between an attorney and his client. Morris v. Slappy, 461 U.S. 1, 13-14 (1983). The purpose of providing assistance of counsel is to ensure that criminal defendants receive a fair trial; a Sixth Amendment claim should focus on the adversarial process, not the attorney and client relationship. Wheat v. U.S., 486 U.S. 153, 159 (1988). With respect to the prejudicial element of the Strickland test, "a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Premo

v. Moore, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 733, 739 (2011) (citation omitted).

The ineffective assistance of counsel claim was exhausted by timely appeal in the state appellate court, and subsequently in the California Supreme Court. (Lodgment 13; Lodgment 17.) The appellate decision was the last reasoned state opinion. That court rejected all of Petitioner's claims. As to the first <u>Marsden</u> hearing, the appellate court held:

> As the [trial] court expressly found, Bridgeman failed to meet the requisite burden of proof in his March 23 <u>Marsden</u> motion. Kotler had met with Bridgeman at various court hearings and discussed his case with him for at least a few hours in total and offered to conduct the investigation Bridgeman desired. Kotler also obtained a plea bargain sentence significantly lighter than the one Bridgeman otherwise faced.
> The foregoing record does not show that Bridgeman's constitutional right of counsel was substantially impaired by the court's denial of his first <u>Marsden</u> motion. We thus conclude the court did not abuse its discretion in denying that motion.

(Lodgment 16, at 4.)

As to the second <u>Marsden</u> hearing, the appellate court held:

> The court properly denied Bridgeman's second <u>Marsden</u> motion. The record adequately demonstrates that Kotler had simply given Bridgeman his honest professional assessment with which Bridgeman disagreed. At the time of the hearing, Kotler had interviewed the witnesses Bridgeman indicated he believed would have helped his case, but Kotler did not find their testimony helpful. Similarly, Kotler found the court records Bridgeman requested unnecessary and unhelpful to his case. The court therefore was well within its discretion in concluding that the situation did not involve ineffective assistance of counsel, but rather "a defendant who thinks that there should be a different outcome than the one that is likely to occur."

(<u>Id.</u> at 5-6.)

Lastly, as to the third <u>Marsden</u> hearing, the appellate court held:

> At Bridgeman's third and final <u>Marsden</u> hearing, the court explicitly asked him what new grounds for the motion, if any, he had that he had not brought up at his previous motion hearings. Bridgeman admitted he had none. The court then denied his motion.
> The court properly denied Bridgeman's third <u>Marsden</u> motion because the court did not abuse its discretion in denying his first two and his third was baseless. We thus conclude Bridgeman fails to prove the court's denial of his three <u>Marsden</u> motions substantially impaired his constitutional right to effective assistance of counsel.

(<u>Id.</u> at 6.)

In his habeas petition, Petitioner fashions his ineffective assistance claim from a plethora

of inconsequential and unsupported statements. In particular, Petitioner claims that counsel: did not make himself available to Petitioner (Doc. 5, at 24); did not listen to Petitioner's remarks (Id.); "did not have the time to represent [Petitioner] competently" (Id. at 25); only spent "a few moments" with Petitioner before court hearings (Id.); "did not have time to devote to the case" (Id. at 26); and did not call certain witnesses or "follow up" on them (Id. at 26-27). Petitioner offers no evidence in support of his claims besides these bare assertions. Similarly, Petitioner's Traverse provides no evidence to buttress his arguments. (Doc. 17.)

In his first Marsden hearing according to the state court record, Petitioner complained that his attorney was too busy, did not conduct the preliminary hearing appropriately, and negotiated an unsatisfactory plea deal. (Lodgment 16, at 3.) In his second Marsden hearing, Petitioner told the state judge that he did not see "eye to eye" with counsel and that his attorney had "no legal terms (sic) to stand on." (Lodgment 7, 3A RT 153.) In his third Marsden hearing, Petitioner reiterated the above and admitted that he had no new grounds for moving for a new attorney. (Lodgment 16, at 6.) Although the record shows that Petitioner and his attorney differed in their views of the legal issues, Petitioner's statements to the trial court at the March 23, 2010 Marsden hearing demonstrated that he did not dispute the core factual circumstances of the prosecution's case. (Lodgment 3, 1A RT 7-9.) At the second hearing, in response to the judge's question as to whether Petitioner's attorney understood what Petitioner was attempting to communicate to the trial court, Petitioner's attorney indicated that he had many conversations with Petitioner and he was able to understand what Petitioner was asking of him. (Lodgment 7, 3A RT 167.) Petitioner acknowledged to the judge at the May 17, 2010 hearing that he speaks with his attorney about certain matters. (Lodgment 7, 3A RT 154.) Although Petitioner and his counsel had a disagreement as to the legal viability of using a self-defense theory, self-defense instructions were given and self-defense was argued by Petitioner's attorney in closing. (Lodgment 10, 6 RT 485-487, 493-494.) Petitioner's attorney did follow up on witnesses that Petitioner wanted him to pursue but none of the witnesses were deemed to be of assistance to Petitioner's defense. (Lodgment 7, 3A RT 159-161, 164-167; Lodgment 9, 5 RT 376-399, 408-420.) Petitioner's attorney also followed up on Petitioner's request for nonrelevant transcripts.

(3 RT 157-159, 167.) In sum, the record shows Petitioner's attorney was responsive to his client and that there wasn't a total breakdown in communication between Petitioner and his attorney such that Petitioner was constructively denied effective counsel.

Perhaps the alleged shortcomings of Petitioner's trial counsel, even if true, could establish a less than perfect attorney-client relationship; but they would only go to the first Strickland prong. To wit, Petitioner has failed to explain or allege how there is a reasonable probability that, but for counsel's supposed errors, the result of the proceeding would have been different, and has thereby failed to also meet his burden under Strickland's second prong. The problem with Petitioner's conclusory assertions, that his trial counsel failed to adequately investigate the case and prepare for trial, is that the he has identified no exculpatory evidence or additional defensive theories that would have been discovered or developed had his counsel investigated the case more thoroughly. Nowhere in his petition does Petitioner identify any potential defense witnesses who could have testified at petitioner's trial, explain what helpful testimony any of those witnesses could have provided, or otherwise identify any exculpatory evidence then-available that could have been discovered or developed by a more thorough investigation by his trial counsel. Thus, Petitioner has not satisfied the prejudice prong of Strickland.

This Court recommends that Ground One regarding his ineffective assistance of counsel claim be **DENIED** in its entirety.

**B. *The Marsden Motions***

A denial of a Marsden motion is an abuse of discretion only if the defendant showed that a failure to replace ineffective counsel would substantially impair his or her right to counsel. Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000). Thus, as Petitioner has not shown that his counsel was ineffective, this Court cannot find that the state court abused its discretion in denying Petitioner's Marsden motions. The state appellate court gave reasoned opinions, supported by the facts. (Lodgment 16, at 4-6.) There was no misapplication of Supreme Court law.

This Court recommends that Ground Two be **DENIED** in its entirety.

///

///

///

///

## VI.

## CONCLUSION

This report and recommendation is submitted to the Honorable Irma E. Gonzalez, the United States District Judge assigned to the case, pursuant to 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or before January 17, 2013. The document should be captioned "Objections to Report and Recommendation." Any reply to the objections shall be served and filed on or before January 29, 2013. The parties are advised that failure to file objections within the specific time may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.1991).

**IT IS SO ORDERED**.

DATE: December 26, 2012

_____
Peter C. Lewis
U.S. Magistrate Judge
United States District Court